## SECHRIST v
## PUBLIC SQUARE THEATRE CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 16, 1936

Edward L. Williams, Youngstown, for plaintiff in error.

Harrington, Huxley & Smith, Youngstown, for defendant in error.

## OPINION

By NICHOLS, J.

In her second amended petition filed in the Common Pleas Court of Mahoning County, Ohio, Ruth Sechrist, alleged that the defendant, Public Square Theatre Company, is a corporation organized and existing under and by virtue of the laws of the state of Ohio, and as such is engaged in the business of operating a theatre in the city of Youngstown, Ohio; that in connection with the theatre the defendant maintains a certain stage which is used from time to time by shows performing therein; that upon the stage the defendant has caused to be placed various electrical equipment, both above and under the stage, for the purpose of illuminating the stage during performances; that at different points throughout the stage plugs have been caused to be placed for the convenience of the theatre, wherein from time to time bulbs are placed for illumination of the stage; that on one side of the stage defendant has caused to be placed and maintained an electrical box of switches, which control the turning on and off of electricity into the electrical equipment; that all of the electrical equipment is under the sole and exclusive control of defendant, and that when the current is turned on by switches it carries electricity of high voltage and is inherently dangerous to all persons using the stage.

Plaintiff further averred that she was an employee and dancer in a show known as "The Continental Review," that the show was performing in the theatre of the defendant on the 17th day of April, 1935; that while she was so using the stage, she, by reason of the defective electrical equipment, which was under the sole and exclusive control of the defendant, and also due to the negligence of defendant in certain respects, sustained a shock from an electric volt causing certain injuries to her, which are set forth in the petition.

Plaintiff further averred that the defendant, in the operation of its theatre and stage at such time and place, was negligent in these respects:

"First: In permitting said stage to be used when the electrical attachments to

said stage were in an old, worn out, defective and unsafe condition.

"Second· In carelessly and negligently failing and neglecting to guard said electrical current in any manner.

"Third: In failing and neglecting to warn or apprise plaintiff of the dangerous condition of said stage and the electrical appliances thereon.

"Fourth: In failing and neglecting to inspect said stage and the electrical appliances thereon.

"Fifth: In carelessly and negligently charging said electrical equipment with electricity carrying a high voltage when the attachments thereto were in an old, worn out and dangerous condition and unsafe and unfit for use."

Plaintiff averred that' as a direct and proximate result of the negligent acts of the defendant a current of electricity was caused to pass through her body while she was in the act of using the stage, so that she was violently precipitated to the floor of the stage, causing injuries, which are specifically described, whereby she claims to have been damaged in the sum of $50,-000 for which she prayed judgment.

Upon leave of court subsequently obtained the plaintiff filed an amendment to her petition, wherein she alleged that at the time of the occurrences hereinbefore set forth, and for some time prior, there were certain ordinances in full force and effect in the city of Youngstown, providing, among other things, that owners of theatres within the city of Youngstown shall make, or cause to be made by an employee to whom the duty of making fire inspection shall be delegated, and whose name shall be filed with the fire department, a daily inspection of such theatres, and file each day with the chief of the fire department a report of such inspection, in accordance with and upon blanks furnished by the chief of the fire department, which ordinances further required all electrical wiring done within the city of Youngstown, after the passage of the ordinances, to be in accordance with the rules and regulations of the National Board of Fire Underwriters for installation of electric wiring and apparatus, known as the "National Electric Code," as the same is modified from time to time.

Plaintiff further alleged that the ordinances referred to were violated by the defendant, and that the violations were the proximate cause of plaintiff's accident and resulting injuries.

Defendant for its answer to plaintiff's second amended petition admits its corporate organization and existence, and that as such it is engaged in the business of operating a theatre in the city of Youngstown, Ohio; admits that there is a stage located in the theatre which is used from time to time by shows performing in the theatre; admits that there is certain electrical equipment, including a switch box and stage plugs, placed on and about the stage for the purpose of illuminating the stage during the performance of shows thereon; admits that plaintiff was an employee and dancer in a show known as "The Continental Review," which show performed in defendant's theatre in Youngstown on the 17th day of April, 1935, and other days; and admits that while on the stage plaintiff claims to have sustained an electric shock and to have received certain injuries.

Further answering, defendant denied each and every statement, allegation and averment in plaintiff's petition contained, not hereinbefore specifically admitted to be true.

Defendant further averred that the electrical equipment from which plaintiff claims to have received a shock was under the sole and exclusive control of the traveling show known as "The Continental Review," with which plaintiff was performing and of which she was a part, and that if plaintiff received any shock from such electrical equipment it was through no fault or negligence on the part of this answering defendant

Defendant further averred that the operator or operators of the show, sometimes known as "The Continental Review," and otherwise known as the "Marcus Show," were operating the show under an independent contract, and as such independent contractor maintained and operated, under the exclusive control of the independent contractor, a separate electrical switch board to which were attached certain electric wires leading to the electric lighting equipment from which plaintiff claims to have received an electric shock, and which equipment was owned and controlled exclusively by the independent contractor; and that there were no wires or any connections whatsoever leading thereto from defendant's switchboard or any source of electricity under the control of this defendant.

Defendant further averred that if plaintiff received any injuries, as alleged, due to any defect in the equipment, or negligence in the use and operation thereof,

this defendant is in no wise responsible to the plaintiff therefor.

For reply to the answer of defendant the plaintiff denied all the statements, allegations and averments contained in the answer which are not set forth in her second amended petition.

Plaintiff further averred by way of reply, that should it develop or accrue that there was any arrangement or agreement between the defendant, Public Square Theatre Company, and the Marcus Show or Continental Review, such arrangement was not one of independent contract, but was an arrangement by which defendant, Public Square Theatre Company, and the Marcus Show or Continental Review, were engaged in a joint enterprise in the giving of the performance at the time of the occurrence of this accident.

The cause coming on for trial to the court and jury, and the plaintiff having introduced her evidence and rested her case, the defendant moved the court to withdraw the case from the consideration of the jury and to direct a verdict for the defendant, which motion was sustained by the trial court, and thereupon final judgment was entered in favor of the defendant and against the plaintiff. Error is duly prosecuted to this court by the plaintiff below to reverse the judgment of the trial court, it being claimed, of course, that the trial court erred in sustaining the motion of defendant for a directed verdict and in directing the verdict for defendant.

From a careful examination of the record we find evidence of probative value from which the jury may have found that Mr. Marcus, owner of the Marcus Show known as "The Continental Review," after playing an engagement of four days in the theatre of the defendant at Youngstown, immediately prior to the 17th day of April, 1935, under a written contract whereby the theatre company and Marcus divided the receipts "fifty-fifty," a new verbal arrangement or agreement was made between Marcus and the defendant company whereby the show was to remain at the theatre of the defendant for an additional four days, the theatre company "to furnish the theatre and everything else," and whereby Marcus "was supposed to furnish the wardrobe and the girls and the show," and out of the proceeds received for admissions to the theatre the theatre company was first to have $100 each day, and the balance of the proceeds was to be split between Marcus and the theatre company, "fifty-fifty;" that the theatre com-

pany "was to furnish the stage hands, the light and sweeping, cleaning the theatre, the stage and everything." The $100 first deducted by the theatre company each day from the receipts was used by the theatre company for the payment of the stage hands; that in addition to furnishing the girls, their wardrobes and the show, Marcus was likewise to furnish certain electrical equipment in addition to that owned by the theatre company, and which additional electrical equipment furnished by Marcus was set up upon the stage of the theatre by the electrician employed by Marcus, assisted by two electricians furnished and paid by the theatre company.

During the performance on the 17th day of April, 1935, Ruth Sechrist, one of the dancing girls in the Marcus Show, stepped upon a metal plate in the floor of the theatre stage, which plate was a part of the original electrical equipment owned by the theatre company, and at the same time Ruth Sechrist came in contact with some part of the electrical equipment owned by Marcus and provided for the lighting of the stage, at which time Ruth Sechrist was wearing slippers with metal heels, had on a metal hat, and had on a dress composed of metal material decorated with metal ornaments; and the electrical equipment furnished by Marcus, which had theretofore been installed in the theatre by the electrician of Marcus, assisted by the electricians of the theatre company, was in a defective condition, whereby Ruth Sechrist received an electrical shock which threw her to the floor of the theatre, striking her back and severely injuring her.

From the record it further appears that the stage manager of the theatre company, prior to and at the time of the installation of the electrical equipment furnished by Marcus, examined the same, found it to be old, worn and unfit for use, but nevertheless permitted the same to be placed upon defendant's stage and connected to the electric system of the theatre.

The trial court sustained defendant's motion for a directed verdict at the close of plaintiff's case upon the following grounds:

"First: That the plaintiff, being an employee of an independent contractor and there being no joint enterprise as defined by law, namely, joint control over the instrumentality claimed to have caused the injury, namely, the tower or whatever instrumentality, whatever the evidence discloses caused the injury, there is no duty of care under the issues owing by the the-

atre to the plaintiff excepting the duty not to use active negligence against her. There is no evidence that the defendant used active force or active negligence against her, but the evidence is entirely that the premises were in a passive and static condition so far as the defendant is concerned.

. "Second: The evidence does not show affirmatively that the instrumentality claimed to have caused the injury was owned by the defendant company and was one of its instrumentalities * * *. The court is unable to find actual control by the defendant over the instrumentality, whatever it was, that caused the injury."

The trial court erred in sustaining this motion. There is no evidence in the record from which the jury would have been warranted in finding the relation of independent contractor existing between the theatre company and Marcus.

"An independent contractor has been defined as one who carries on an independent business, in the course of which he undertakes to accomplish some result or do some piece of work for another, being left at liberty in general to choose his own means and methods, and being responsible to his employer only for the results which he has undertaken to bring about." **21 Ohio Jurisprudence, 623, §2.**

**Post Publishing Co v Schickling, 22 Oh Ap 318, (4 Abs 613), 154 NE 751,** affirmed in **Schickling v Post Publishing Co., 115 Oh St 589, 155 NE 143.**

Marcus did not undertake to accomplish some result or do some piece of work for the theatre company. Marcus and the theatre company engaged in an enterprise, not necessarily joint, whereby each agreed to do and furnish certain things to a common end that each might share the profits. It is unnecessary that the relationship of joint enterprise be established by plaintiff in this case in order to permit a recovery by the plaintiff. Proof of joint enterprise would have been necessary if plaintiff sought to impute the negligence of one member of the joint enterprise to another member thereof, which is not the situation in this case.

An examination of the case of **Bloom v Leech, Admr., 120 Oh St 239, 166 NE 137,** is enlightening upon the subject of imputed negligence under the relationship of joint enterprise.

In plaintiff's second amended petition re-covery is based upon the sole negligence of the theatre company, and no attempt is made to join Marcus and the theatre company as joint tort feasors.

Under the evidence in this case the plaintiff was upon the stage of the defendant company, not as a trespasser but as of right, and to her the defendant owed the duty of exercising ordinary care. One of the duties imposed upon the theatre company by the ordinance of the city of Youngstown was to make daily inspection of the theatre and to make certain reports to the fire department of the city. The testimony of the stage manager of the defendant company, as shown in the record, clearly shows that no such inspection was ever made by the theatre company. Such inspection would, we think, have clearly disclosed to the theatre company that the equipment which it had permitted and authorized Marcus to place upon its stage was defective and out of order and unfit for use. This evidence likewise authorized the jury in finding from the evidence of the stage manager of the defendant company, who was present at the time of the installation of this equipment of Marcus, that he had actual knowledge of the worn out, unfit and dangerous character of the equipment of Marcus, and that the theatre company nevertheless contracted with Marcus for the placing of the defective equipment upon its theatre stage, and allowed and permitted the defective equipment to be on the stage with the further knowledge that it was in juxtaposition to the metal plate maintained by the theatre company in the floor of its stage.

From the testimony of plaintiff the jury were also warranted in finding that the theatre company knew of the inherently dangerous character of the instrumentality which caused the accident to plaintiff, resulting in her injuries.

It must be remembered that before the trial court may sustain a motion for a directed verdict for the defendant, the evidence of the plaintiff must be such, construed in the light most favorable to the plaintiff, that reasonable minds could arrive at no other inference than that the defendant was guilty of no negligence which proximately and directly contributed to plaintiff's injuries. It is not necessary that the plaintiff show that defendant's negligence was the sole proximate cause of plaintiff's injuries.

Confusion in this case has arisen, no doubt, from the fact that the plaintiff in her reply to the answer of the defendant has

set up the relationship of joint enterprise. Joint enterprise is not alleged in the petition and plaintiff's cause of action is not made by the allegations of her reply. The allegations of the reply are solely for the purpose of refuting the allegations of defendant's answer. In other words, as hereinbefore stated, it was not necessary to a recovery by plaintiff that she establish the relationship of joint enterprise, provided she has otherwise sustained the allegations of her petition charging negligence upon the part of the defendant which was a direct and proximate cause of her injuries. From a careful reading of the record we think that the plaintiff met this burden to the extent that the issue thus made was for the determination of the jury. It may, perhaps, be helpful to point out some of the evidence introduced in this case on behalf of the plaintiff. As shown by the record, page 27 and following, E. C. Prinson was called as a witness for the plaintiff. This witness, at the time of the injuries to the plaintiff, was the manager of the defendant's theatre. It was first attempted by the plaintiff to call the witness for cross-examination, but it appearing that at the time of the trial the witness was not an officer of the defendant company the plaintiff made him her own witness.

On page 28 of the record this witness testified that at the time of the accident he was acting in a general supervisory capacity in the matter of handling, setting up and testing equipment brought into the theatre; that he did not issue any orders for an inspection of any of the Marcus Show equipment. Having had his memory refreshed by calling attention to his testimony taken by way of deposition in the case, the witness testified that there was a "constant inspection order for our own equipment, as well as any equipment which might be brought into the theatre," that "if there is anything wrong with any equipment in any part of the theatre it is reported to me immediately." The witness further testified that one William J. Harris was in the employ of the theatre company on the day of the accident and during the performance; that Mr. Harris did not report to the witness any defect in the equipment on the stage; that Mr. Harris was in the employ of the theatre company as one of the stage men working for the theatre company. The general manager of the defendant, having testified that he had "general supervisory capacity in the matter of handling, setting up, and testing of equipment brought into the theatre," thus destroyed any claim that the relation of independent contractor existed in this case.

William J. Harris being called as a witness for the plaintiff testified that he was in the employ of the theatre company at the time Ruth Sechrist was hurt; that at that time he was back stage making, changing and setting the scene for back stage when he heard Ruth Sechrist scream; that he went over to see what happened and touched the tower (one of the pieces of electrical equipment furnished by Marcus). After having his recollection refreshed by calling to his attention the deposition he had formely given in the case, Mr. Harris testified as follows:

"There was a bunch around there talking, so I touched the tower.

"Q. What happened to you? A. I got a shock—a mild shock, that is all—a shock we get sometimes in a lamp socket when you screw in a lamp, sometimes you get it, any way, this girl touched that tower, the armor she had on was enough to burn her up. * * *

Q. What kind of a costume did the girl have on? A. A spangle costume.

Q. What was it made of? A. Tin, silver, tin.

Q. * * * She had a metal costume and a helmet on her head, besides metal shoes? A. Yes. * * *

Q. All right, sir. Now about the equipment that was there, was any inspection made of that equipment on stage? A. I don't think so.

Q. So that there will be no question about it, was there any at all made? A. No.

Q. By anyone in the employ of the theatre? A. No, I couldn't say that, Mr. Jenkins might have inspected it, he was bound to.

Q. Did you ever know any inspection to be made of any equipment when it is set up? A. No. None is made. There ain't ever been made in this city that I know of, any theatre.

Q. They never made an inspection of any kind? A. No, which should be. This is a lot of rotten stuff brought in there and set up and used. * * *

Q. Was any inspection made of cables or wires before this show went on? A. Not in this city, no, they don't make any inspections. * * *

Q. What condition were the towers in as to being, from your observation, as to being able to be used? A. Well, in my estimation, they was junk.

Q. Now, who put this junk together to put this performance on? A. The house —not the house electrician but the electrician with the company.

Q. Who else? A. Mr. Jenkins helped.

Q. Who is Mr. Jenkins? A. The electrician of the house.

Q. Of the Palace Theatre? A. Yes.

Q. Who else? A. And a boy by the name of Edwards.

Q. Who did he work for? A. Mr. Jenkins.

Q. That is Mr. Jenkins, the electrician for the house? A. Yes."

The witness having had his recollection further refreshed by calling his attention to his former deposition wherein he testified that certain of the electrical equipment was not fit for use, answered that that was the fact, but that the faulty equipment was set up as best they could to run the show.

Without adverting further to the evidence introduced on behalf of the plaintiff, and giving to it the interpretation most favorable to the plaintiff, as the trial court was required to do in passing upon the motion for a directed verdict, we are clearly of the opinion that the record contains evidence of probative value from which the jury may have found that the defendant was guilty of negligence in the premises, which negligence was a direct █ and proximate cause of plaintiff's injuries, and that the trial court erred in sustaining the motion for a directed verdict.

Some claim is made by counsel for defendant in error, in brief and oral argument, that if the relationship of joint enterprise existed between the theatre company and Marcus, then Ruth Sechrist, the plaintiff, was likewise engaged in the joint enterprise. There is no evidence in this record from which any inference could arise that the plaintiff was engaged in a joint enterprise with the defendant, and we need give no further consideration to this proposition.

Having arrived at the conclusion that substantial justice has not been done by reason of the prejudicial error hereinbefore set forth, the judgment of the trial court is reversed and the cause remanded to the Common Pleas Court for further proceedings according to law.

Judgment reversed and cause remanded.

ROBERTS and CARTER, JJ, concur.